UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DARNELL CREDELL,

Plaintiff,

-v- 7:16-CV-857

DET. MATT DAWLEY, Detective,
P.O. J. GIAQUINTO, Police Officer,
and SGT. LAWLEE, Sergeant,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES: OF COUNSEL:

DARNELL CREDELL
Plaintiff, Pro Se
15-B-3607
Livingston Correctional Facility
P.O. Box 91
Sonyea, NY 14556

BOND, SCHOENECK LAW FIRM JONATHAN B. FELLOWS, ESQ.
Attorneys for Defendants
One Lincoln Center
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

## I. INTRODUCTION

On January 2, 2016, pro se plaintiff Darnell Credell ("Credell" or "plaintiff") filed this 42 U.S.C. § 1983 action in the U.S. District Court for the Western District of New York. Plaintiff named as defendants three members of the Watertown police department: Matthew Dawley ("Dawley"), Joseph Giaquinto ("Giaquinto"), and Dennis Lawlee ("Lawlee") (collectively

"defendants"). According to the complaint, (1) defendants subjected plaintiff to an illegal search and seizure on February 11, 2015, when they removed him from a taxi cab in Watertown, New York and arrested him; and (2) Dawley violated plaintiff's due process rights by falsely arresting him "on the charges of Possession and Sale of 'Crack Cocaine.'"

On August 4, 2016, after Credell's action was transferred to this District, U.S. Magistrate Judge Therese Wiley Dancks conducted an initial review of plaintiff's complaint before recommending that (1) the illegal search and seizure claim be allowed to proceed against Dawley and Giaquinto; (2) plaintiff's due process claim be dismissed without prejudice; and (3) plaintiff be permitted to amend his complaint. Judge Dancks's report and recommendation was adopted in its entirety by Order issued August 30, 2016.

On September 8, 2016, Credell filed a second amended complaint. Judge Dancks again reviewed plaintiff's pleading before recommending that (1) the illegal search and search claim be permitted to proceed against all three defendants but (2) the due process claim be dismissed with prejudice and without leave to amend. Judge Dancks's report and recommendation was again adopted in its entirety by Order issued October 11, 2016.

On October 14, 2016, Credell's case was reassigned to this Court for all further proceedings. Thereafter, plaintiff's motion for leave to appoint counsel was denied without prejudice and defendants answered the operative complaint.

On February 7, 2017, defendants moved under Federal Rule of Civil Procedure ("Rule") 56 seeking summary judgment on Credell's search and seizure claim. In response, plaintiff amended his operative complaint to include a copy of a police report and, on February 24, 2017, plaintiff moved for summary judgment in his own favor. Because the

briefing deadlines have expired, both motions will be decided on the basis of the current submissions without oral argument.

## II. BACKGROUND[1]

On February 3, 2015, "a tall, thin black male, with a beard and mustache, going by the street name of 'D'" sold crack cocaine to a confidential informant out of an apartment located at 557 Mill Street in Watertown, New York. See Dawley Aff. ¶ 4; Giaquinto Aff. ¶ 2; Lawlee Aff. ¶ 4.

On February 4, 2015, the City of Watertown Court issued a warrant permitting a police search of the upper apartment of 557 Mill Street. Lawlee Aff. Ex. A (the "Search Warrant"). The Search Warrant directed law enforcement officers to search "any and all persons" located at the premises during its execution. Id. As relevant here, the Search Warrant also specifically permitted a search of "a tall, thin black male, with a beard and mustache, going by the street name of 'D'" and stated that "anyone who may be at that location may be there to purchase and/or possess controlled substances." Id.

On February 11, 2015, shortly before law enforcement officers executed the Search Warrant, officers observed Credell exit the premises and hop in a taxi cab. Dawley Aff. ¶ 3; Lawlee Aff. ¶ 5. Lawlee immediately directed Giaquinto to stop the taxi because, according to Lawlee, plaintiff matched the description of the individual named in the Search Warrant. Id. ¶ 3. Giaquinto complied, stopping the taxi and detaining plaintiff until Dawley arrived on scene and frisked him. Giaquinto Aff. ¶¶ 2-4; Dawley Aff. ¶ 5. When Giaquinto

[1] Mindful of Credell's pro se status, the factual recitation is based on a careful review of both parties' submissions. Genuine disputes are noted.

asked plaintiff to identify himself, he initially gave a false name and date of birth. Giaquinto Aff. ¶ 5; Credell Aff. ¶¶ 5-6.[2]

Because Giaquinto was unable to verify the existence of the person Credell had initially claimed to be, he warned plaintiff that giving a false name is a crime. Giaquinto Aff. ¶¶ 5-6. Eventually, plaintiff relented and gave his true name to Giaquinto, who took plaintiff to the City's Public Safety Building and charged him with "false personation" under N.Y. Penal Law § 190.23. Id. ¶ 6; Dawley Aff. ¶ 6; Credell Aff. ¶ 6. At that time, law enforcement also discovered the existence of an outstanding warrant for plaintiff's arrest arising from a parole violation in Kings County. Giaquinto Aff. ¶ 8; Dawley Aff. ¶ 6; Credell Aff. ¶ 6. Plaintiff was turned over to the Jefferson County Correctional Facility based on these charges. Id.

On March 9, 2015, a state grand jury indicted Credell for criminal sale and possession of a controlled substance in the third degree in violation of N.Y. Penal Law §§ 220.16, 220.39. See Lawlee Aff. Ex. B. Plaintiff was later convicted of these charges following a jury trial. Id.

## III. LEGAL STANDARD

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson, 477 U.S. at 247.

[2] ECF No. 36 at 2. Pagination corresponds with that assigned by CM/ECF.

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Anderson, 477 U.S. at 250 n. 4. The failure to meet this burden warrants denial of the motion. Id. However, in the event this initial burden is met, the opposing party must then show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. In sum, summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

**IV. DISCUSSION**

At the outset, it bears noting that courts are generally reluctant to grant summary judgment against a pro se litigant where, as here, very little in the way of discovery has been conducted. See, e.g., Graham v. Lewinski, 848 F.2d 342, 244 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.").

"The rationale underlying this rule is that a pro se litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection." Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (further observing that "[t]he solicitude afforded to pro se litigants takes a variety of forms" but "most often consists of liberal construction of pleadings, motion papers, and appellate briefs").

Here, however, Credell received warnings from the Court and from defendants about the possible consequences arising from the entry of summary judgment against him. And more importantly, a careful review of the submissions reveals that the parties are actually in agreement over the relevant facts underlying plaintiff's detention and arrest.

At first glance, paragraph six of Credell's Statement of Material Facts indicates he "gave his real name" to Giaquinto after being removed from the taxi cab, ECF No. 36 at 10, a fact seemingly at odds with defendants' various submissions. But as plaintiff's own notarized affidavit goes on to explain:

> 5) When the plaintiff was arrested on February 15, 2015, he gave a false name. When asking P.O. Giaquinto why he was being arrested, P.O. Giaquinto refused to inform him, in return, the plaintiff gave a false name . . . .
>
> 6) At the police station, the plaintiff gave his true name once the nature of the arrest was revealed. Plaintiff was arrested for a parole warrant for a curfew violation for a past credit card charge. In addition, P.O. Giaquinto charged the plaintiff with impersonation.

ECF No. 36 at 2.

Turning to the merits, Credell's "illegal search and seizure" claim is premised on defendants' alleged violation of his rights under the Fourth Amendment, which provides in

relevant part that: "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Specifically, Credell asserts he was unlawfully searched and seized when defendants stopped his taxi cab, ordered him out, handcuffed him, and frisked him. Defendants contend that the Search Warrant authorized these actions; in the alternative, they argue that reasonable suspicion justified the initial traffic stop.

Generally speaking, "[p]olice executing a search warrant are privileged to detain individuals, even to the point of handcuffing them, while [a] search is carried out." Bancroft v. City of Mt. Vernon, 672 F. Supp. 2d 391, 403 (S.D.N.Y. 2009); see also Michigan v. Summers, 452 U.S. 692, 705 (1981) ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."). Indeed, "Summers makes clear that when a neutral magistrate has determined police have probable cause to believe contraband exists, '[t]he connection of an occupant to [a] home' alone 'justifies detention of that occupant.'" Muehler v. Mena, 544 U.S. 93, 99 n.2 (2005) (quoting Summers, 542 U.S. at 703-04).

However, the U.S. Supreme Court has more recently explained that the detention authority granted by Summers is not without limit. In Bailey v. United States, 568 U.S. 186 (2013), the Court concluded that "[a] spatial constraint defined by the immediate vicinity of the premises to be searched is [ ] required for detentions incident to the execution of a search warrant." As the Court observed, "[t]he police action permitted here—the search of a

residence—has a spatial dimension, and so a spatial or geographical boundary can be used to determine the area within which both the search and detention incident to that search may occur." Id.

Assuming Giaquinto's initial stop of the taxi cab ran afoul of the geographic limitation imposed by the Supreme Court's decision in Bailey, it was nevertheless independently justified. Under Terry v. Ohio, "a police officer may briefly detain a suspect for investigative purposes (e.g., for questioning) and may also conduct a frisk or a patdown of the person to assure the officer's personal safety during the stop if the officer has reasonable grounds to believe the suspect to be armed and dangerous." United States v. Robertson, –F. Supp. 3d–, 2017 WL 931615, at *11 (D. Conn. Mar. 8, 2017).

"A Terry stop represents an intermediate response allowing police to pursue a limited investigation when they lack the precise level of information necessary for probable cause to arrest." United States v. Elmore, 482 F.3d 172, 178 (2d Cir. 2007). Accordingly, "Terry stops do not require probable cause, but, rather, reasonable suspicion that criminal activity has occurred or is about to occur." United States v. Levy, 2016 WL 6835539, at *8 (E.D.N.Y. Nov. 21, 2016). To satisfy Terry, police "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [on a citizen's liberty interest]." Elmore, 482 F.3d at 178-79.

Here, defendants directly observed Credell exit a residence where law enforcement officers were about to execute the Search Warrant, a document which specifically indicated that people were likely to be present at that location to purchase, and consequently possess, illegal drugs. Lawlee, who observed plaintiff's departure, immediately directed Giaquinto to detain plaintiff. See United States v. Bailey, 743 F.3d 322, 333-34 (2d Cir. 2014)

(acknowledging that "a stop not falling within the spatial limits of Summers might nevertheless be reasonable under Terry" and concluding on remand that reasonable suspicion existed to conduct initial stop of suspect who had just left the premises where a search warrant was about to be executed).

Credell appears to dispute whether he matched the Search Warrant's description of "a tall, thin black male, with a beard and mustache, going by the street name of 'D,'" but Giaquinto was still en route to the premises when Lawlee issued his order and was therefore entitled to rely on Lawlee's statement that plaintiff matched this description as partial justification to effect his initial seizure. Compare Dancy v. McGinley, 843 F.3d 93, 109 (2d Cir. 2016) (concluding description of suspect as "thin, black, and male," without anything more, is insufficient to give rise to reasonable suspicion); with Brown v. City of N.Y., 201 F. Supp. 3d 328, 331 (E.D.N.Y. 2016) (discussing collective knowledge doctrine, which permits fellow officers to reasonably rely on information shared between each other).

Even viewing the facts in the light most favorable to Credell, the non-movant for present purposes, the various factors leading up to the initial stop, when taken together, permitted Giaquinto to initially detain plaintiff for investigatory purposes. See, e.g., United States v. Freeman, 735 F.3d 92, 96 (2d Cir. 2013) (requiring Terry stop to be justified at its inception because "[a]ny events that occur after a stop is effectuated cannot contribute to the analysis of whether there was reasonable suspicion to warrant the stop in the first instance").

Credell's affidavit further states that Dawley "grazed [his] private area" during the frisk. Credell Aff. ¶ 2. Under Terry, an officer is permitted to "conduct a frisk or a patdown of the person to assure the officer's personal safety during the stop if the officer has reasonable grounds to believe the suspect to be armed and dangerous." Robertson, 2017 WL 931615,

at *11. Here, there is no indication in the record that defendants' conduct exceeded the permissible boundaries of a safety search. See id. at *11-*12 (discussing limitations of a Terry frisk). Accordingly, plaintiff's illegal search and seizure claim must be dismissed.

Construed liberally, Credell may also be attempting to assert a false arrest claim, since his most recent submissions make much of the fact that no contraband was recovered from his person during the stop. But by that point, the parties agree that plaintiff had already intentionally given Giaquinto a false name and date of birth in violation of New York Penal Law § 190.23, which makes it unlawful for any person, "after being informed of the consequences of such act," to "knowingly misrepresent[ ] his or her actual name, date of birth or address to a police officer or peace officer with intent to prevent such police officer or peace officer from ascertaining such information."

In other words, because Giaquinto possessed probable cause to arrest him on that basis, any false arrest claim by Credell would also fail. See, e.g., Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) ("Probable cause is a complete defense to an action for false arrest brought under New York law or § 1983."). Finally, to the extent plaintiff's latest submissions also appear to assert a challenge to the validity of the Search Warrant itself, that claim is rejected. See Bancroft, 672 F. Supp. 2d at 401-02 ("[A] magistrate's determination that probable cause exists to support the issuance of a warrant is entitled to great deference from a reviewing court.").

## V. CONCLUSION

Reasonable suspicion existed to justify the initial stop, and when Credell deliberately gave a false name and date of birth to the police, probable cause existed to arrest him.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED; and

2. Plaintiff's motion for summary judgment is DENIED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

United States District Judge

Dated: May 3, 2017
Utica, New York.